The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On or about September 2, 1994 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Liberty Mutual Insurance Company was the carrier on the risk at all relevant times.
3. Defendant-employer, Union Camp Corporation was engaged in the lumber business.
4. The plaintiff, Larry S. Harris, had been working for Union Camp Corporation for approximately 17 years and for the last 2 1/2 years as a saw filer.
5. The plaintiff's last date of work with the defendant-employer was February 3, 1995.
6. Plaintiff received $151.00 per week in sickness and accident benefits which were fully funded by Union Camp Corporation. The parties agreed that defendants are entitled to a credit for those benefits paid.
In addition, a Form 22 was submitted by the parties by stipulation.
The pretrial agreement dated January 13, 1997 is incorporated by reference. The documents attached to the agreement were stipulated into the record.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff, who is now forty-seven years old, began working for defendant-employer in February 1978 as a laborer. Defendant-employer made lumber products and plaintiff worked in different jobs at the plant over the years. In September 1994 his job was saw filer. He worked the night shift and sharpened saw blades for the various saws used at the plant. His average weekly wage was $755.50.
2. Shortly before the end of his shift on the morning of September 2, 1994, plaintiff had to walk down some steps at work at the bottom of which was a hole in the floor covered by a loose board. As he was walking down the steps, his right foot slipped and hit the hole in such a way that the board covering it was knocked up and his leg went into the hole up to his knee. Although he got some splinters in his leg, he did not think that he was seriously injured at that time. Nevertheless, he reported the incident to the supervisor there.
3. During the next couple of weeks, plaintiff developed some infection in two areas where splinters had gone into his leg, so he was sent to Dr. McNeely, the company doctor. Dr. McNeely examined him on September 21, 1994, prescribed antibiotic medication and advised plaintiff to use warm compresses on the inflamed areas. Plaintiff missed work on September 22 due to swelling and on September 23 the doctor advised him to keep his leg elevated. Dr. McNeely released him to return to work on September 26 since his symptoms were resolving.
4. Plaintiff did not receive further medical treatment for over two months afterwards, but he experienced problems with numbness at the outer part of his lower right leg and foot. The ankle area became painful to the point that he began limping, so on December 15, 1994 he returned to Dr. McNeely. Since he had a history of diabetes and arthritic problems in his knees, Dr. McNeely was unsure what was causing his symptoms and referred him to Dr. Byrd who reportedly was a rheumatologist. Dr. Byrd saw him the next day and noted an absent reflex at the right ankle. Nerve tests were ordered to determine the nature of his problem but plaintiff could not get them at that time. In January he was complaining of pain from his right buttock to his ankle, so Dr. Byrd thought he probably had L5-S1 radiculopathy and ordered an MRI. Plaintiff was unable to have the MRI but had a CT scan which showed no evidence of a herniated disk or nerve root compression although there was mild bulging at L4-5 and L5-S1. Nerve conduction studies were then performed which appeared consistent with an L5-S1 radiculopathy. Consequently, Dr. Byrd referred plaintiff to Dr. Martinez, a neurosurgeon, for evaluation.
5. Dr. Martinez began treating plaintiff on February 3, 1995. Since a CT scan could miss a ruptured disk, he ordered a myelogram to determine if the symptoms were due to a disk problem. However, the test only revealed mild bulging at L5-S1 which would not explain plaintiff's symptoms. Further nerve testing indicated that plaintiff had a neuropathy not a radiculopathy, meaning that there was some sort of lesion below his spine on the S1 nerve, but Dr. Martinez was never able to identify the precise nature of the abnormality. Nevertheless, the findings were consistent with a stretch injury to that nerve.
6. Plaintiff continued to see Dr. Martinez until March 31, 1995 when the doctor discussed surgery to cut the sensory part of the nerve as a treatment option, but plaintiff never returned for follow-up. Rather, he began to go Dr. Fleming, a neurologist, for treatment. However, Dr. Fleming diagnosed a low back problem instead of the nerve injury found by Dr. Martinez. Despite the different diagnosis, treatment with anti-inflammatory and anti-depressant medication would still have been appropriate.
7. Plaintiff's condition appeared to slowly worsen during the next year. He had to use a cane or crutch to walk any distance, and he continued to experience pain down his right leg and his leg seemed weak. Dr. Fleming recommended a rehabilitation program but, since the workers' compensation claim had been denied, plaintiff never underwent such a program.
8. To further complicate matters, plaintiff fell in the snow in January 1996 and had at least a temporary aggravation of his condition, and he subsequently developed symptoms in his right arm and upper back. A cervical MRI then revealed significant degenerative changes especially at C5-6. However, Dr. Fleming did not refer him for surgical evaluation but continued to provide conservative treatment until the doctor's deposition was taken. Plaintiff remained symptomatic until that time.
9. On September 2, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. The fact that he slipped and his right leg went into a hole in the floor constituted an unusual occurrence which interrupted his regular work routine.
10. Since plaintiff experienced numbness in his lower leg following the injury and since he was later determined to have a problem with his S1 nerve which was consistant with a stretch injury to the nerve, the injury to his S1 nerve was a proximate result of his injury at work on September 2, 1994.
11. Despite medical opinions to the contrary, plaintiff apparently did not have significant problems with his lumbar spine. Dr. Martinez, the neurosurgeon, found that he had not sustained a herniated disk and did not have nerve root compression within the spine. However, he did have some sort of damage to the S1 nerve at a point below the spine. The nerve damage caused the symptoms of pain, numbness and weakness of his leg which became disabling.
12. As a result of the September 2, 1994 injury by accident, plaintiff was unable to work in his normal capacity for defendant from September 22 through 25, 1994 and from February 4, 1995 through the date of hearing on January 13, 1997. Since he did not receive treatment recommended by his physicians due to lack of funding, he did not reach maximum medical improvement during that time. His employer did not offer him light work during the healing period. Dr. Martinez released him to return to work at light duty for limited hours in February 1995 but never released him to return to his regular job. His condition subsequently worsened and Dr. Fleming did not release him to return to work in any capacity, although with rehabilitation the doctor thought that plaintiff might at some point be able to work in a sedentary capacity.
13. Plaintiff remained unable to work in any capacity as of the date of hearing and Dr. Fleming considered his prognosis to be poor.
14. The cervical spine problems for which plaintiff was treated beginning in April 1996 were degenerative in nature and were not proven to have been a direct and natural result of this injury.
15. Although plaintiff fell in the snow in January 1996 and experienced an exacerbation of his symptoms, he was already disabled from the injury at work and the fall did not cause any identifiable additional lasting impairment.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On September 2, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2 (6).
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $466.00 per week from September 22 through 25, 1994, from February 4, 1995 through the date of hearing on January 13, 1997 and continuing thereafter for as long as he remains so disabled. However, defendant is entitled to a credit for disability benefits paid to plaintiff during the time in question. G.S. § 97-29; G.S. § 97-42.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. However, plaintiff is not entitled to have defendant provide treatment for his cervical spine condition. G.S. § 97-2(19); G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $466.00 per week from September 22 through 25, 1994, from February 4, 1995 through January 13, 1997 and continuing thereafter for as long as he remains so disabled. This compensation is subject to a credit in favor of defendants for disability benefits previously paid to plaintiff for the time in question. That portion of this compensation which has accrued shall be paid in a lump sum. The award is also subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident but not those arising from his cervical spine condition.
3. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is approved for plaintiff's counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
4. Defendants shall pay the costs.
This the ___ day of March 1998.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
LKM/bjp